# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Dyrhaug, et al., | No. CV-13-01309-PHX-BSB |
| Plaintiffs, | **ORDER** |
| v. | |
| Tax Breaks Incorporated, et al., | |
| Defendants. | |

Plaintiffs Kevin Dyrhaug, Percy Davis, Mitchell DeVillier, Natalie Brent, Ronald Green, Victor D'Vita, Taylor Shelby, and Jessica Nash (Plaintiffs) bring this action pursuant to the Fair Labor Standard Act (FLSA). (Doc. 1.) Plaintiffs also assert several state law claims or theories of liability including failure to pay wages, breach of contract, conversion, unjust enrichment, quantum meruit, bad faith, fraud, alter ego/piercing the corporate veil, and partnership liability. (Doc. 1 at 9-19.) Plaintiffs' claims are based on their alleged employment for Tax Breaks, Inc. (TBI), a tax preparation company, at its stores located in Family Dollar stores in different states. (*Id.*)

Plaintiffs Dyrhaug, Davis, Devillier, Brent, and Shelby allege they were district managers for TBI from January to April 2013. (Doc. 1 at 8.) Plaintiff Green alleges he was an hourly administrative assistant for TBI from January to April 2013. (*Id.*) Plaintiff D'Vita alleges that he was an hourly assistant manager for TBI from January to February 2013. (*Id.* at 9.) Plaintiff Nash alleges she was an hourly data entry clerk for TBI from

January to April 2013.  (*Id.*)  Plaintiffs assert that they were not adequately compensated for work they performed.  (*Id.* at 8.)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs move for summary judgment to resolve two issues: whether Plaintiffs were employees of TBI under the FLSA; and whether Defendant Allen was an employer under the FLSA. (Doc. 95 at 1-2.)  Plaintiffs specifically argue that: (1) they were employees of TBI, not Tax Breaks franchises, under the FLSA (Doc. 95 at 2, 6); (2) they were employees of TBI under federal common law (*Id.* at 4); and (3) Defendant Allen was an employer under the FLSA.  (*Id.* at 7-13.)

Defendants TBI, Darius Allen, and Sharmale McCallum-Allen (Defendants) oppose the motion for summary judgment.[1]  (Doc. 97.)  Defendants argue that TBI was a franchisor, it sold licenses to individual franchisees, and Plaintiffs were employees of Tax Breaks franchisees, not employees of TBI or Allen.  (Doc. 97 at 3-5.)  Alternatively, Defendants argue that even if the Tax Breaks locations where Plaintiffs worked were not franchises, Plaintiffs were independent contractors, not employees of TBI.  (Doc. 97 at 5-7.)  Defendants also argue that Allen was not an employer under the FLSA.  (Doc. 97 at 8-9.)  Plaintiffs have filed a reply in support of their motion for summary judgment. (Doc. 99.)

As set forth below, the Court finds that Plaintiffs D'Vita, Green, and Nash were employees of TBI under the FLSA and grants summary judgment for Plaintiffs on this issue.  However, the Court denies summary judgment on whether Plaintiffs Dyrhaug, Davis, DeVillier, Brent, and Shelby were employees under the FLSA.  The Court also denies summary judgment on whether Plaintiffs Dyrhaug, Davis, DeVillier, Brent, Shelby, D'Vita, Nash, and Green were employees under federal common law.  Finally, the Court denies summary judgment on whether Defendant Allen was an employer under the FLSA.

---

[1]  The Court has previously dismissed numerous other Defendants named in the Complaint.  (Docs. 21, 22, 30, 31, 107.)

## I. Plaintiffs' Motion to Strike

After reviewing the summary judgment materials, on May 21, 2015, the Court ordered Defendants to file a supplemental statement of facts that complied with Local Rule of Civil Procedure 56.1(b). (Doc. 101.) On June 3, 2015, Defendants filed a supplemental statement of facts (DSSOF). (Doc. 102.) In their supplemental statement of facts, Defendants referred to evidence that they had not previously disclosed. (Doc. 102 at ¶¶ 47-50.) On June 9, 2015, Plaintiffs filed a motion to strike that evidence from the supplement statement of facts pursuant to Rule 37(c)(1). (Doc. 103.) Defendants did not file a response to the motion to strike, and the time to do so has passed.

In their recently filed DSSOF, Defendants state that "while [Defendant Allen] had difficulty providing signed copies of the franchise agreements before the disclosure deadline in this case, he has since provided thousands of pages of executed franchise agreements as a supplement to his disclosure in both this matter and a separate matter filed in this Court [*Hernandez, et al. v. Tax Breaks, et al*., 14cv00512-PHX-ESW]." (Doc. 102 at ¶¶ 47-50.) Defendants assert that the documents are too voluminous to attach to DSSOF, but that they could provide the Court with an electronic version of the franchise documents. (*Id.*) Defendants also state that they could generate a list of franchise owners. (*Id.* at ¶ 50.) Defendants, however, do not state whether any of the Plaintiffs in this case was a franchise owner or worked at a franchise, and they have not filed any executed franchise agreements with the Court. (*See id.*)

In their motion to strike, Plaintiffs ask the Court to strike evidence of "thousands of pages of executed franchise agreements" to which Defendants refer in DSSOF paragraphs 47 through 50. (Doc. 103 at 3.) Plaintiffs argue that they are prejudiced by Defendants' failure to produce evidence of the franchise agreements during discovery because they were unable to pursue discovery to determine the authenticity of the franchise agreements. As set forth below, the Court agrees and grants the motion to strike.

## A. Discovery Related to the Franchise Agreements

Plaintiffs filed their Complaint in July 2013. (Doc. 1.) In March 2014, Defendants Allen and Tax Breaks filed an answer. (Doc. 49.) In June 2014, Plaintiffs served their initial request for production of documents on Defendants. (Doc. 61.) Defendants Darius and Jane Doe Allen (the Allens) responded to these discovery requests on July 25, 2014. (Doc. 104 at 1-6.)[2] Request for production number fourteen requested "[a]ny and all documentation regarding Darius Allen and Kevin Murphy's ownership of Tax Breaks, Inc." (Doc. 104 at 6.) The Allens responded that:

> Darius Allen was the sole owner of Tax Breaks, Inc. His titles were President, Director, Secretary, and Treasurer. Please see attached Entity Details from the Secretary of State, Nevada, Bates Stamped Allen00259-00261. Allen is in the process of obtaining additional corporate documents showing him as sole owner. When/if those documents are discovered, Allen will promptly supplement this response.

(*Id.*) The Allens did not supplement their July 25, 1014 discovery responses.[3]

In addition, Plaintiffs' counsel deposed Allen on January 15, 2015 and asked whether Allen had "proof that any licensees or franchisees ever existed." (Doc. 96-2 at 11-12.)[4] Allen responded that he had "no proof on [him] that licensees or franchisees exist." (*Id.*)

## B. Sanctions under Rule 37(c)

Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is a "'self-executing,' 'automatic' sanction 'to provide[] a strong inducement for

---

[2] Docket 104 is an exhibit to Plaintiffs' Motion to Strike. (Docs. 103, 104.)

[3] Under Rule 26(e)(1), "a party . . . who has responded to . . . a request for production . . . must supplement or correct its . . . response: (A) in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

[4] Docket 96 is Plaintiffs' Statement of Facts in Support of Motion for Summary Judgment (PSOF). For ease of reference, the Court cites to PSOF and the attachments by the CM/ECF document and page numbers.

disclosure of material . . . .'" *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37, Ad. Comm. Notes (1993 amendments)). Rule 37(c)(1), however, allows the use of information or witnesses that were not timely disclosed if the failure to disclose was substantially justified or harmless, but places "the burden [] on the party facing sanctions to prove harmlessness." *Id.* at 1107 (citing *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless . . . .")).

Plaintiffs argue that they were prejudiced by Defendants' failure timely to supplement their discovery responses with evidence of the franchise agreements, as Rule 26(e)(1) requires, because they are unable to pursue discovery to determine the authenticity of the franchise documents. (Doc. 103 at 5.) Plaintiffs also question the timing of Defendants' disclosure of these documents. During discovery, Defendants did not produce any evidence of executed franchise agreements, and Defendant Allen stated that he did not have that evidence. In response to Plaintiffs' motion for summary judgment, Defendants did not produce any executed franchise agreements. (Doc. 97.) Then, after the Court required Defendants to submit a supplemental statement of facts, Defendants produced franchise documents. The Court's May 21, 2015 Order did not request or permit Defendants to file any previously undisclosed evidence or other evidence to support their supplemental statement of facts. (Doc. 102.)

The Court finds that Defendants failed to comply with Rule 26(e)(1). They did not respond to the motion for sanctions and, thus, have not shown that their untimely disclosure of the franchise documents is justified or harmless. Additionally, Defendants' late disclosure of franchise agreements is harmful. Defendant Allen indicated during his deposition that he did not have any evidence of any franchise agreements (Doc. 96-2 at 11-12), and he did not produce any executed franchise agreements to support his response to Plaintiffs' motion for summary judgment. (Doc. 97.) After discovery and the briefing on Plaintiffs' motion for summary judgment closed, Defendants produced franchise

documents.  (Doc. 102 at ¶¶ 47-50.)  By waiting until this late date to disclose the franchise documents, Defendants deprived Plaintiffs of the opportunity to address the authenticity of the franchise agreements through the discovery process.

Accordingly, the Court grants Plaintiffs' motion to strike to the extent that it strikes the reference to "thousands of pages of executed franchise agreements" contained in DSSOF paragraphs 47-50.  (*Id.*)  The Court will not consider the reference to franchise agreements when ruling on Plaintiffs' motion for summary judgment.[5]

## II.    Summary Judgment Standard

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party may not rely on the mere allegations in the pleadings, but must set forth by affidavit or other appropriate evidence specific facts showing there is a genuine issue for trial   *Liberty Lobby,* 477 U.S. at 249.  The nonmoving party must produce at least some "significant probative evidence tending to support" its position. *Smolen v. Deloitte, Haskins, & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  The issue is not whether the "'evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented.'"

---

[5]  Even if Tax Breaks was a franchisor, it could be liable under the FLSA as a joint employer.  *See Singh v. 7-Eleven*, 2007 WL 715488, at *3-*6) (N.D. Cal. Mar. 8, 2007 (discussing whether a franchisor was a joint employer for purposes of FLSA liability). *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing 29 U.S.C. § 216(b)).

*United States ex rel. Anderson v. N. Telecom, Inc*., 52 F.3d 810, 815 (9th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 252. This requires more than the "mere existence of a scintilla of evidence in support of the [nonmoving party's] position[;]" there must be "evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby,* 477 U.S. at 252. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102-03 (9th Cir. 2000). The Court considers Plaintiffs' motion for summary judgment under this standard.

## III. Plaintiffs' Status as Employees of TBI under the FLSA

Plaintiffs move for summary judgment on the issue of whether they were employees of TBI under the FLSA. (Doc. 95 at 2-4.) Plaintiffs assert an FSLA claim only in Count One of the Complaint. (Doc. 1 at 10-12 (asserting that Defendants failed to pay D'Vita, Green, and Nash overtime in violation of 29 U.S.C. § 207).) Because Count One only pertains to Plaintiffs D'Vita, Green, and Nash, the Court considers whether those Plaintiffs were employees of TBI under the FLSA and denies summary judgment on this issue of whether Plaintiffs Dyrhaug, Davis, DeVillier, Brent, and Shelby were employees of TBI under the FLSA.

### A. The FLSA Definition of Employee

The FLSA requires employers to pay employees a minimum hourly wage and overtime pay. 29 U.S.C. §§ 201-219. Employers are "generally require[d] . . . to pay overtime to [non-exempt] employees who work more than 40 hours per week." *East v. Bullock's Inc*., 34 F. Supp. 2d 1176, 1180 (D. Ariz. 1998). The FLSA creates a private right of action against any employer who violates § 206 (the minimum wage requirement) or § 207 (the overtime compensation requirement). *See Josendis*, 662 F.3d at 1298) (stating that "[i]f a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay") (citing 29 U.S.C. § 216(b)).

"The elements of an FLSA claim [for unpaid overtime] are: (1) plaintiff was employed by defendant during the relevant period; (2) plaintiff was [a covered employee]; and (3) the defendant failed to pay plaintiff . . . overtime." *Quinonez v. Reliable Auto Glass*, LLC, 2012 WL 2848426, at *2 (D. Ariz. Jul. 11, 2012); *see also* 29 U.S.C. §§ 207, 216. Plaintiffs seek summary judgment on the first element, which is whether D'Vita, Green, and Nash were employees of TBI. (Doc. 95 at 2-4.)

The FLSA defines an "employee" as an "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee [.]" 29 U.S.C. § 203(d). "Courts have adopted an expansive interpretation of the definition of 'employer' and 'employee' under the FLSA, to effectuate the broad remedial purpose of the [FLSA]." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

Under that expansive interpretation, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id.* Courts often invoke the following six factors articulated in *Real* when analyzing the "economic reality" of a situation: (1) "the degree of the alleged employer's right to control over the manner in which the work is performed"; (2) "the alleged employee's opportunity for profit or loss depending upon his managerial skill"; (3) "the alleged employee's investment in equipment or materials required for his task, or his employment of helpers"; (4) "whether the service rendered requires a special skill"; (5) "the degree of permanence of the working relationship"; and (6) "whether the service rendered is an integral part of the alleged employer's business." *Id.* These factors, however, are not exhaustive and "[t]he presence of any individual factor is not dispositive of whether an employee/employer relationship exists." *Id.* Instead, the "economic reality" controls regardless of whether contractual language purports to describe a working relationship. *Id.* Even "the subjective intent of the parties . . . cannot override the economic realities reflected in the factors." *Id.*

Plaintiffs argue that under the *Real* factors, D'Vita, Green, and Nash were employees of TBI. (Doc. 95.) In their response to Plaintiffs' motion for summary judgment, Defendants do not dispute that the Court should consider the *Real* factors to determine whether Plaintiffs were employees or independent contractors. However, Defendants do not apply the *Real* factors. (Doc. 97 at 5-6.) Instead, they apply factors that the Supreme Court articulated in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 332 (1992), which the Ninth Circuit later adopted, for determining independent contractor or employee status under ERISA. *See Adcock v. Chrysler, Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999); *Luchter v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980).[6] (Doc. 97 at 5-7.)

The factors that the Supreme Court articulated in *Darden* for determining employee or independent contractor status include the *Real* factors. *Compare Real*, 603 F.2d at 754 *with Darden*, 503 U.S. at 323-24. However, in *Darden,* the Court articulated several additional factors that are not among the factors in *Real*. *See Darden*, 503 U.S. at 323-24 (the additional factors include the location of the work, the method of payment, whether the hiring party is in business, the provision of employment benefits, and the tax treatment of the hired party). As discussed below, the additional *Darden* factors do not apply in this case to determine whether Plaintiffs D'Vita, Green, and Nash were employee of TBI under the FLSA.

*Darden*, unlike this case, involved the definition of employee in an ERISA case. The Court noted that the ERISA statute defines "employee" circularly as "any individual employed by an employer." *Darden*, 503 U.S. at 323 (citing 29 U.S.C. § 1002(6)). The Supreme Court found that definition unhelpful and, therefore, construed the term "employee" in the ERISA context to incorporate common law agency criteria. *Darden*, 503 U.S. 318, 323 & n.3. In *Adcock*, the Ninth Circuit applied the *Darden* factors in a

---

[6] As Defendants note (Doc. 97 at 6), in *Lutcher,* the court articulated several additional relevant factors to determine employee status in a Title VII case. *Lutcher*, 633 F.3d at 883. The Ninth Circuit has acknowledged that those factors are "essentially indistinguishable" from the *Darden* factors. *Adcock*, 166 F.3d at 1292.

Title VII case, noting that Title VII uses the same definition of employee as ERISA. *See Adcock*, 166 F.3d at 1291 n.3. The court explained that the holding in *Darden* applies to statutes that contain the term employee, and do not otherwise define the term. *Id.*

In *Darden*, the Court recognized that the FLSA, like ERISA, defines "'employee' to include 'any individual employed by an employer.'" *Darden*, 503 U.S. at 326. However, unlike ERISA, the FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Darden*, 503 U.S. at 326 (citing 29 U.S.C. §§ 203(e), (g)). The Court stated that the "latter definition, whose striking breadth we have previously noted . . . stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Darden*, 503 U.S. at 326. The Court found that "the textual asymmetry between the two statutes precludes reliance on FLSA cases when construing ERISA's concept of 'employee.'" *Id.*

For that same reason, the *Darden* factors do not apply to determine whether Plaintiffs were employees under the FLSA. Rather, the factors articulated in *Real* apply. Accordingly, Defendants' discussion of *Darden* factors that are not also *Real* factors is not relevant to whether Plaintiffs D'Vita, Green, and Nash were employees of TBI under the FLSA.

**B.    The Economic Realties Test Applied to Plaintiffs**

Plaintiffs bear the burden of establishing that D'Vita, Green, and Nash were employees of Defendant TBI for purposes of the FLSA. Therefore, the Court considers for each Plaintiff the evidence related to the six factors of the economic realities test articulated in *Real*. *See Real*, 603 F.2d at 748, 754.

**1.    Degree of Control over Manner of Work**

The first factor requires assessing "the degree of the alleged employer's right to control the manner in which the work is to be performed." *Real*, 603 F.2d at 754. D'Vita, Green, and Nash assert that in January 2013 they each received a letter offering them a position at TBI in Arizona. (Doc. 96-1 at 14, 16, 17.) They assert that the offer letters stated that they would be paid $10.00 per hour. (*Id.* at 14, 16, 17.)

D'Vita states that he was hired as an assistant manager at TBI in Arizona and was to report to Dyrhaug.[7] (Doc. 96-1 at 14.) In his affidavit, Plaintiff Davis states that, with Allen's approval, he interviewed and hired Green as his administrative assistant in January 2013. (Doc. 96-1 at 4.) To support that statement, Plaintiffs submitted a letter offering Green the position of customer service representative effective January 14, 2013 at a Chicago, Illinois Tax Breaks location.[8] (Doc. 96-10 at 3.) Green states that he performed administrative tasks, including scheduling and taking messages for Davis. (Doc. 96-1 at 16.) Davis also states that he interviewed Nash and hired her in January 2013, with Allen's approval, as a data entry clerk for TBI.[9] (Doc. 96-1 at 4.)

Defendants do not dispute that D'Vita, Green, and Nash received offers of employment from Tax Breaks. (Doc. 96 at ¶¶ 90, 85, 95; Doc. 102 at ¶¶ 90, 85, 95.) Instead, they argue that the offers were for employment with a Tax Breaks franchise, not TBI. (Doc. 102 at ¶¶ 85, 90, 95.) Thus, Defendants dispute that D'Vita, Green, and Nash were hired by TBI and state that "Allen did not hire any Plaintiffs in this action." (Doc. 102 at ¶¶ 84, 89, 94.)

However, Defendants have not produced evidence of any executed franchise agreements, or that the locations where Plaintiffs worked were franchises. (Doc. 102.) Rather, their argument regarding franchises is based solely on Allen's affidavit and unexecuted franchise documents. (Doc. 102 at ¶ 11; Doc. 102, Ex. A at ¶ 33; Exs. D-H.)

---

[7] Plaintiffs have submitted a copy of an unsigned Chase bank check for $1,003.58 to Victor D'Vita from Tax Breaks. (Doc. 96, Ex. 13.) However, D'Vita states that he was never paid. (Doc. 96-1 at 14.) Defendants dispute that TBI paid employees from a bank account owned and operated by TBI. (Doc. 96 at ¶ 28; Doc. 102 at ¶ 28.)

[8] Green also states that Allen regularly held conference calls where TBI employees could ask him questions. (Doc. 96-1 at 16.) He states that he participated in one such call and, when he asked Allen about payroll, Allen responded that he would be paid twice a month as a W-2 employee. (*Id.*) Defendants dispute that Allen regularly held conference calls, but admit that he participated in one conference call "at the request of one of the franchise owners." (Doc. 102 at ¶ 87.)

[9] Nash states that in January 2013, she attended a new hire orientation at which Allen was a presenter. (Doc. 96-1 at 18.) She states that Allen discussed her job responsibilities, how to perform her duties, and discussed general employment issues, such as taxation of her wages. (*Id.*) Defendants dispute that Nash attended a new hire orientation at which Allen presented. (Doc. 102 at ¶ 97.)

Defendants' unsupported allegations that TBI was a franchisor, and that Plaintiffs worked for franchisees are not sufficient to create a dispute of fact regarding whether Plaintiffs were employees of TBI. Not only are Defendants' allegations unsupported, they are not specific as to each Plaintiff named in the FLSA count who worked at Tax Breaks locations in different states.

D'Vita also attests that he received a new hire packet, including an employee handbook, which is the same as the packet provided to Plaintiff Davis.[10] (Doc. 96-1 at 14.) Plaintiffs did not submit copies of D'Vita's offer letter or new hire packet. Plaintiff Davis states that Allen directed him to provide Green with a new hire packet and that TBI was to compensate Green. (Doc. 96-1 at 4.) Davis also states that he provided Nash with a new hire packet and that TBI was to compensate Nash. (*Id.* at 4-5.) Green and Nash state that they received a new hire packet in the same form as the one provided to Davis. (Doc. 96-1 at 16, 18.)

Defendants dispute that TBI provided D'Vita with an employee handbook and assert that TBI provided template documents to franchisees, including an employment handbook. (Doc. 102 at ¶ 91.) Defendants do not dispute that Green and Nash received new hire packets, but claim that the new hire packet was "presumably" a "template document" that Defendants provided for individual franchisees to use. (Doc. 102 at ¶ 86, 96.) The employee handbook welcomes employees to "Tax Breaks, Inc." and is signed by "CEO Darius Allen." (Doc. 96-9 at 7.) The employee handbook indicates that TBI had guidelines regarding confidential information, conflicts of interest, drug use, personal appearance, outside activities, and attendance. (Doc. 96-9 at 7-17.) Defendants have not offered any evidence to support their assertion that Plaintiffs received the employee handbook from a franchisee of TBI.

Plaintiffs D'Vita, Green, and Nash also assert that they did not have any autonomy in determining their schedules or the number of hours they worked. (Doc. 96-1 at 14, 16, 18.) Defendants claim that they did not participate in the day to day tasks "at the

---

[10] Davis' employee handbook is located at Doc. 96-9 at 7-25.

individual franchises," including controlling when the Plaintiffs worked. (Doc. 97 at 7; Doc. 98 at ¶ 7, 8; Doc. 102, Ex. A at ¶¶ 6, 21.) Although Allen attests that neither he nor Tax Breaks "controlled the hours worked by these Plaintiffs, the location at which they worked, required any reports on any work performed by Plaintiffs, or paid for any work or travel expenses" (Doc. 102, Ex. A at ¶ 21), this is a single statement among numerous assertions that TBI was a franchisor and the Plaintiffs worked for franchisees. (Doc. 102, Ex. A at ¶¶ 6, 7, 8, 10, 12, 13, 14, 15, 16, 17, 20, 23, 28, 31, 33, 35.) As previously stated, Defendants have not presented any evidence to support their conclusory statements that TBI sold franchises and that Plaintiffs worked for the individual franchises, rather than for TBI itself. Thus, Defendants' assertions regarding the franchises are not sufficient to create a genuine dispute of material fact regarding whether franchisees, rather than TBI, controlled the manner in which Plaintiffs performed their work.

Although Defendants dispute many of Plaintiffs' specific assertions about their interactions with Allen, the Court finds that the employee handbook and Plaintiffs' statements in their affidavits that they did not have autonomy in choosing their schedule or how many hours they worked provide more than a scintilla of evidence from which a reasonable jury could conclude that TBI controlled the manner in which Plaintiffs performed their jobs. *See Liberty Lobby*, 477 U.S. at 252. Defendants have not offered evidence to establish a genuine issue of disputed fact on these issues. Accordingly, this factor weights in favor of finding D'Vita, Green, and Nash were employees of TBI.

## 2. Opportunity for Loss or Profit

The second factor depends on the Plaintiffs' "opportunity for profit or loss depending upon his managerial skill." *Real*, 603 F.2d at 754. In their affidavits, D'Vita, Green, and Nash state that they were to be paid $10.00 per hour, and that they "did not stand to gain or lose financially, other than [their] pay." (Doc. 96-1 at 14, 16, 17-18; Doc. 96 at ¶ 61.) Defendants do not dispute this statement, except to the extent that "any of the named Plaintiffs were franchise owners, they could have lost their initial licensing

fee if their business endeavor was unsuccessful." (Doc. 96 at ¶ 61; Doc. 102 at ¶ 61.) Defendants have not offered any evidence of executed franchise agreements, or that Plaintiffs were franchise owners. Defendants' conclusory allegations regarding the potential loss of a licensing fee is not sufficient to create a dispute of fact regarding whether Plaintiffs had an opportunity for loss or profit.

When a worker is paid a fixed hourly wage, with no opportunity for commission or bonus, that weighs in favor of employee status. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998) (applying economic realities test and concluding that workers paid a fixed hourly rate had no opportunity for profit or exposure to loss). *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037 (D. Or. Apr. 28, 2010) (citing *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F.Supp.2d 569, 580 (D. Md. 2008) ("[w]here the putative employee's work is, by its nature, time oriented, not project oriented, courts have weighed [this factor] in favor of employee status")). Accordingly, this factor weighs in favor of finding that Plaintiffs were employees of TBI.

### 3. Investment in Equipment or Materials

The third element in the economic realities test is the plaintiff's level of investment in the business, including his "investment in equipment or material required for his task, or his employment of helpers." *Real*, 603 F.2d at 754. "The investment 'which must be considered as a factor is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself.'" *Baker*, 137 F.3d at 1442 (quoting *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989)). "In making a finding on this factor, it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation." *Baker*, 137 F.3d at 1442. In *Real*, for example, the Ninth Circuit held that the strawberry growers' "investment in light equipment hoes, shovels and picking carts [was] minimal in comparison with the total investment in land, heavy machinery and supplies necessary for growing the strawberries." *Real*, 603 F.2d at 755.

D'Vita, Green, and Nash state that they did not invest money in TBI.  (Doc. 96-1 at 14, 16, 18; Doc. 96 at ¶ 61.)  Defendants do not dispute this fact.  (Doc. 102 at ¶ 61.)  However, they again state that "to the extent that any of the named Plaintiffs were franchise owners, they could have lost their initial licensing fee if their business endeavor was not successful."  (*Id.*)  Defendants, however, have not presented any evidence that these Plaintiffs were franchise owners and thus, they have not offered any evidence to create an issue of fact.

D'Vita, Green, and Nash further state that "Tax Breaks provided [them] with the tools [they] needed to perform [their] duties, specifically a computer, email address, and phone software."  (Doc. 96-1 at 14, 16, 18; Doc. 96 at ¶ 44.)  In their supplemental statement of facts, Defendants dispute this fact, but do not directly address whether TBI provided Plaintiffs with equipment to perform their duties.  (Doc. 102 at ¶ 44.)  Rather, Defendants state that they "did not provide any instructions to Plaintiffs other than instructions on how to operate a franchise."  (*Id.*)  Defendants, however, have not offered any evidence of executed franchise agreements, that the Tax Breaks locations where D'Vita, Green, and Nash worked were franchises, or these Plaintiffs were franchise owners.

The employee handbook welcoming employees to TBI, and signed by CEO Darius Allen, includes a section entitled "Protection and Proper Use of Company Assets."  (Doc. 96-9 at 12.)  That section states that employees are obligated to "protect Tax Breaks's assets (e.g. computer equipment and software, intellectual property, etc.)."  (*Id.*)  This evidence supports D'Vita's, Green's, and Nash's statements that TBI provided them with the tools they needed to perform their jobs, which included administrative tasks.  (Doc. 96-1 at 14, 16, 18.)

Therefore, Defendants have not presented sufficient evidence to create a genuine issue of fact regarding whether D'Vita, Green, or Nash invested financially in TBI, or in equipment or materials required to perform their job duties.  Thus, this factor supports a finding that D'Vita, Green, and Nash were employees of Tax Breaks.  *See Mathis v.*

*Housing Authority of Umatilla*, 242 F. Supp. 2d 777, 784 (D. Or. 2002) (stating a worker's lack of investment in equipment or materials required for work weighed in favor of an employee relationship).

### 4. Degree of Skill Required

The fourth factor is "whether the service rendered requires a special skill." *Real*, 603 F.2d at 754. A minimal level of skill weighs in favor of finding that an individual was an employee, rather than an independent contractor. *See Harris v. v. Vector Mkg. Corp.*, 656 F. Supp. 2d 1128, 1139 (N.D. Cal. 2009). Plaintiff D'Vita states that his job duties included administrative tasks and assuming managerial duties when Plaintiff Dyrhaug was unavailable. (Doc. 96-1 at 14.) Plaintiff Green states his job duties included administrative tasks. (Doc. 96-1 at 16.) Plaintiff Nash states that her job duties included data entry. (Doc. 96-1 at 17.) Defendants do not dispute that Plaintiffs did not require a special skill or license to perform their duties. (Doc. 96 at ¶ 62; Doc. 102 at ¶ 62.) Accordingly, this factor weighs in favor of an employment relationship.

### 5. Permanency of the Working Relationship

The fifth element of the economic realities test is the permanence of the working relationship between the putative employer and employee. *See Real*, 603 F.2d at 754. According to D'Vita's affidavit, he worked full-time from January to March 2013. (Doc. 96-1 at 14.) According to Percy's and Green's affidavits, Green worked full-time from January to March 2013. (Doc. 96-1 at 4, 16.) The offer of employment sent to Green states that his employment was "at will," and that either party could terminate the employment relationship at any time. (Doc. 96-10 at 3.) According to Percy's and Nash's affidavits, Nash worked full-time from December 2012 to March 2013. (Doc. 96-1 at 4-5, 18.) D'Vita, Green, and Nash all state that they left Tax Breaks because they were never paid. (96-1 at 14, 16, 18.) In their reply, Plaintiffs assert that, had Plaintiffs been paid, the length of the working relationship would have been longer. (Doc. 99 at 9.)

Defendants argue that the working relationship was not permanent because Plaintiffs worked at the Tax Breaks locations for a few months. (Doc. 98 at ¶ 11;

Doc. 102, Ex. A at ¶ 13.)  They also state that either party could have ended the working relationship at any time without notice.  (Doc. 98 at ¶ 12; Doc. 102, Ex. A at ¶ 15.)

The length of time that Plaintiffs would have worked for TBI if they had been paid is unclear, however, it is undisputed that either Plaintiffs or Defendants could have terminated the working relationship at any time and that evidence favors an employment relationship.  *See Mathis v. Hous. Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 785 (D. Or. 2002).  Accordingly, this factor weighs in favor of finding that D'Vita, Green, and Nash were employees.

### 6.     Integral Nature of Services Rendered

The sixth element is whether the service rendered by the plaintiff was "an integral part of the alleged employer's business."  *Real*, 603 F.2d at 754.  In their motion for summary judgment, Plaintiffs state that they performed "services that Tax Breaks was predicated on." (Doc. 95 at 3.)  However, they do not specifically described the service rendered by D'Vita or explain why it was integral to TBI's business.  In their reply, Plaintiffs assert that Plaintiff D'Vita, Green, and Nash assisted with managerial responsibilities and that the business would have been unable to function without them.  (Doc. 99 at 10.)  Plaintiffs, however, do not present any evidence to support this assertion.  (*Id.*)  Furthermore, Nash describes her work as data entry.  (Doc. 96-1 at 17.)

Defendants argue that Plaintiffs' work was not integral to Tax Breaks because "Tax Breaks made its money off the initial licensing fees."  (Doc. 97 at 7; Doc. 98 at ¶ 14; Doc. 102, Ex. A at ¶ 17.)  However, aside from Allen's affidavit, Defendants have not produced any evidence of licensing fees or licensing agreements.  Nonetheless, Plaintiffs' arguments are not sufficient evidence from which a reasonable jury could conclude that D'Vita's, Green's, and Nash's work was an integral part of TBI's business.  Therefore, this factor weighs against finding that Plaintiffs D'Vita, Green, and Nash were employees of TBI.

### 7. Consideration of all Factors

After considering the preceding factors, the Court finds that they weigh in favor of concluding that Plaintiffs D'Vita, Green, and Nash were employees of TBI. As discussed above, with the exception of whether Plaintiffs' work was an integral part of TBI's business, Defendants have not presented sufficient evidence to create a genuine dispute of material fact regarding any of the factors. As the court stated in *Real,* "any individual factor is not dispositive of whether an employee/employer relationship exits." *Real*, 603 F.3d at 754. Instead, that determination depends "upon the circumstances of the whole activity." *Id.* (citations omitted). Therefore, these factors establish that Plaintiffs D'Vita, Green, and Nash were employees of TBI under the FLSA, and the Court grants Plaintiffs' motion for summary judgment on this issue.

### C. Covered Employees Under The FSLA

The Court does not make any determination regarding whether Plaintiffs are entitled to relief under the FLSA. To be entitled to relief under the FLSA, "an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis*, 662 F.3d at 1298; 29 U.S.C. § 207. An employee may qualify as a covered employee either (1) individually, if he is "engaged in commerce or in the production of goods for commerce," or (2) through their employer, if the employee is "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Zorich v. Long Beach Fire Dept. & Ambulance Serv., Inc.*, 118 F.3d 682, 684 (9th Cir. 1997). To be considered an "[e]nterprise engaged in commerce or in the production of goods for commerce," among other things, the defendant must have an annual gross volume of sales or business of not less than $500,000. 29 U.S.C. § 203(s)(1).

Plaintiffs' summary judgment briefing does not address whether any of the Plaintiffs are covered employees under the FLSA. (Docs. 95, 96.) Likewise, Defendants' briefing does not address this issue. (Docs. 97, 98.) Additionally, in their Answer, Defendants deny Plaintiffs' allegation that "Defendants were and are . . . enterprises engaged in commerce or in the production of goods as defined in § 203."

(Doc. 49, at 5; Doc. 1 at 7-8.) The FLSA does not apply unless Plaintiffs are covered employees under the Act. *See Josendis*, 662 F.3d at 1298. Accordingly, although Plaintiffs D'Vita, Green, and Nash established that they meet the definition of employees of TBI under the FLSA, they have not shown that the FLSA applies. Accordingly, the Court does not determine whether they are entitled to relief under the FLSA.

## IV. Employees under Federal Common Law

Plaintiffs seek summary judgment on the issue of whether they were employees of TBI under federal common law. (Doc. 95 at 4, 6.) Rule 56 provides that the court may grant summary judgment on a claim, defense, or a part of a claim or defense. Fed. R. Civ. P. 56(a). Plaintiffs do not identify the claims, or parts of their claims, which pertain to the issue of whether they were employees under federal common law. (Doc. 95.)

Plaintiffs assert a federal claim only in Count One of the Complaint. (Doc. 1 at 10-12.) The remaining counts of the Complaint allege various state law violations and theories of liability based on Plaintiffs' alleged work for TBI that occurred in several different states, including Arizona (Dyrhaug and D'Vita), Illinois (Davis, Green, and Nash), Louisiana (DeVillier), and Nevada (Brent).[11] (*See* Doc. 1 at 4; Doc. 96 at 6-9, Doc. 96, Ex. 1.)

Plaintiffs do not explain why a federal common law definition of employee would apply to any of their claims. Rather, they assert there is a federal common law definition of employee and to support that argument they cite the Supreme Court's decision in *Darden*, 503 U.S. at 324-25. However, as previously discussed in Section III.A, *Darden* does not apply federal common law to define employee under the FLSA. Additionally,

---

[11] The Complaint includes the following counts for relief: (1) violation of the Fair Labor Standards Act (Count One); (2) failure to pay wages, Ariz. Rev. Stat. § 23-355 (Count Two); (3) breach of contract (Count Three); (4) conversion (Count Four); (5) unjust enrichment (Count Five); (6) quantum meruit (Count Six); (7) bad faith (Count Seven); (8) fraud (Count Eight); (9) alter ego (Count Nine); and (10) partnership liability (Count Ten). (Doc. 1.)

Plaintiffs do not explain why *Darden* applies to the definition of employee or employer for purposes of the state law claims asserted in the Complaint.

Although the Court may have supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, state law governs those claims. The legal standard for employee or independent contractor status under Arizona law differs from the FLSA standard. *See Baughman v. Roadrunner Comms., LLC*, 2014 WL 3955262, at *4 (D. Ariz. Aug. 13, 2014) (*comparing Real*, 603 F.2d at 754, *with Santiago v. Phoenix Newspapers, Inc.*, 794 P.2d 138, 142 (Ariz. 1990)). Plaintiffs do not explain why the Court should apply a federal common law or FLSA definition of employee to their state law claims.

Additionally, Count Two alleges that Plaintiffs are entitled to damages under a provision of the Arizona Wage Act, Ariz. Rev. Stat. § 23-355, which allows an employee to recover treble damages for an employer's failure to pay wages. The Arizona Wage Act contains its own definition of an employee as "any person who performs services for an employer under a contract of employment either made in this state" or "to be performed wholly or partly within this state." Ariz. Rev. Stat. § 23-350. Plaintiffs have not addressed this definition of employee or explained why a federal common law definition of employee should apply instead of this statutory definition.

Because Plaintiffs have not shown that employee status under federal common law is part of any claim or defense in this action, the Court denies Plaintiffs' request for summary judgment on this issue. *See* Fed. R. Civ. P. 56(a) (stating that "a party may move for summary judgment, identifying each claim or defense — or part of each claim or defense — on which summary judgment is sought.").

## V. Defendant Darius Allen's Status as an Employer under the FLSA

In Count One, Plaintiffs D'Vita, Green, and Nash seek unpaid overtime under the FLSA. (Doc. 1 at 10-13.) In their motion for summary judgment, Plaintiffs argue that Allen was an employer under 29 U.S.C. § 203(d). (Doc. 95 at 7.) The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in

relation to an employee . . . ." 29 U.S.C. § 203(d); *see also* 29 C.F.R. § 791.2(b)(2) (stating that a joint employment relationship will be considered to exist when "one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee.").

The Ninth Circuit has held that the definition of "employer" under the FLSA is not limited by the common law concept of "employer," but "'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999) (en banc) (quoting *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983)). The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The focus is the "economic reality" of the relationship. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).

When an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *See Lambert*, 180 F.3d at 1012 (internal quotation marks and citations omitted). In *Lambert*, the Ninth Circuit upheld a finding of liability against a chief operating officer and a chief executive officer when the corporate officers had a "'significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ] salaries;[and the responsibility to] maintain [ ] employment records.'" *Lambert*, 180 F.3d at 1001-02, 1012 (quoting the district court's jury instruction). "The evidence, moreover, strongly support[ed] the jury's determination that both [defendants] exercised economic and operational control over the employment relationship with the sales agents, and were accordingly employers within the meaning of the Act." *Id.* at 1012; *see also Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (holding corporation's president personally liable when he had ultimate control over business's day-to-day operations and was the corporate officer principally in

charge of directing employment practices); *United States Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778-79 (6th Cir. 1995) (president and fifty percent owner of corporation was "employer" under FLSA when he ran business, issued checks, maintained records, determined employment practices and was involved in scheduling hours, payroll and hiring employees).

In this case, Plaintiffs do not specifically address the factors recognized in *Lambert*. Rather, they argue that Allen was an employer under the FLSA for four reasons: (1) he had "functional and operational control over Tax Breaks"; (2) he hired and fired employees; (3) he exercised influence over Tax Breaks by negotiating the Family Dollar contract; and (4) he represented Tax Breaks in a labor investigation. (Doc. 95 at 10-13.) In response to the motion for summary judgment, Defendants argue that there is "substantial precedent" that the president or executive officer is not personally liable for alleged FLSA violations when the corporate officer was not responsible for an employee's contract or for setting schedules.[12] (Doc. 97 at 8.) The Court considers these arguments below.

## A. Functional and Operational Control

Plaintiffs assert that Allen was an employer under the FLSA because he was the owner of TBI and that, "as the affidavits of Plaintiffs and other evidence show, Allen had complete financial control over the Tax Breaks." (Doc. 95 at 10-11); *see Baker v. D.A.R.A. II, Inc.*, 2008 WL 191995, at *7 (D. Ariz. Jan. 22 2008) (citing *Johnson v. A.P. Products, Ltd.*, 934 F. Supp. 625 (S.D.N.Y. 1996) (holding that corporate officers with operational control over employing entity fall within the definition of "employer" under § 203(d) of FLSA)).

---

[12] In response to Plaintiffs' motion for summary judgment, Defendants also argue that Plaintiffs are attempting to pierce the corporate veil to hold Allen liable and that there is no evidence that Allen was the alter ego of Tax Breaks. (Doc. 97 at 8.) Plaintiffs' motion for summary judgment does not assert that Allen is the alter ego of Tax Breaks. (Doc. 95.) Instead, Plaintiffs argue that under the FLSA's expansive definition of employer, Allen was Plaintiffs' employer. (*Id.* at 7-11.) Accordingly, Defendants' argument about alter ego liability is not relevant to the Court's ruling on the motion for summary judgment.

Plaintiffs however, do not cite to the portions of the record which support these assertions. (Doc. 95 at 10-11.) As the movants, Plaintiffs bear the initial burden of establishing the absence of any genuine issue of material fact. They must present the basis for their motion and identify those portions of the record that if believed demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The district court is not required to search the record for evidence to support a motion for summary judgment. *See Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). Plaintiffs did not cite the relevant portions of the record to support their assertion that Allen had functional and operational control over TBI. Accordingly, that allegation does not support a finding that Allen was an employer under the FLSA.

### B. Hired and Fired Workers

Plaintiffs next argue that Allen was an employer because he hired DeVillier, Brent, and Percy. (Doc. 95 at 12; Doc. 96 at ¶¶ 30-31); *see Chao v. Vidtape, Inc*., 196 F. Supp. 2d 281, 284 (E.D.N.Y. 2002) (finding president of marketing company was an "employer" under the FLSA because he had the power to hire, fire, supervise employees, set work schedule, and determine rate of pay for employees). They also assert that Allen fired Percy. (Doc. 95 at 12; Doc. 96 at ¶ 31.) Plaintiffs have not offered any other evidence regarding Allen's alleged authority to hire and fire workers. Defendants dispute that Allen hired or fired any of the Plaintiffs in this action. (Doc. 102 at ¶¶ 30, 31.) Considering the conflicting evidence on this issue, a genuine dispute of material fact precludes a finding that Allen hired and fired TBI workers.

### C. Negotiated Family Dollar Contract

Plaintiffs next argue that Allen "actively ran the whole company" because he personally negotiated and entered into the largest contract TBI had as a corporate entity. (Doc. 95 at 12.) The record includes an October 10, 2012 contract signed by Allen as president of Tax Breaks, Inc., and by Family Dollar Operations, Inc. (Doc. 96-7.) The contract permits Tax Breaks "franchised and company owned stores (collectively Operators) to utilize space in Family Dollar stores to provide tax return preparation and

related services in the 2013 tax season." (Doc. 96-7 at 1; Doc. 102, Ex. C at ¶ 3.) Defendants do not dispute that Allen negotiated a contract with Family Dollar on behalf of TBI. (Doc. 97 at 8; Doc. 102 at ¶ 7; Doc. 102, Ex. C at ¶ 3.) Instead, Defendants argue that the other responsibilities of the "individual franchises were handled by the franchises themselves, pursuant to the Franchise Agreements." (Doc. 97 at 9.) As previously stated, Defendants have not presented any evidence to support Allen's assertion that there were Tax Breaks franchises.

Plaintiffs argue that Allen's negotiation of the Family Dollar contract supports a finding that Allen was an employer because he exercised influence over TBI. (Doc. 95 at 12.) To support this argument, Plaintiffs cite *Irizarry v. Catsimatidis*, 722 F.3d 99, 113 (2d Cir. 2013.) In *Irizarry*, the court considered whether an individual who served as chairman and CEO (the corporate officer) of a supermarket chain was individually liable as an employer under the FLSA. *Id.* at 105. The court considered several factors to determine the economic reality of the employment relationship, including whether the corporate officer had the power to hire and fire employees, supervised and controlled employee work schedules or conditions of employment, determined rates and methods of payment, and maintained employment records. *Id.* at 104-05.

The Ninth Circuit recognizes that these factors are relevant to determining whether an individual is liable as an employer under the FLSA. *See Lambert*, 180 F.3d at 1001-02, 1012; *Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 397 (N.D. Cal. 2012) (stating that the Ninth Circuit applies a four-factor economic reality test to determine if an individual is an FLSA employer). In *Irizarry*, the court also considered additional factors that are used to distinguish between an employee and an independent contractor. *Irizarry*, 722 F.3d at 105 (stating that the factors are not rigid rules for identification of an FLSA employer). In *Irizzary*, the court noted that most circuits acknowledge that a company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be an FLSA employer. *Id.* at 107-08 (citing cases).

The portion of the *Irizarry* decision which Plaintiffs cite discusses the corporate officer's involvement with the individual grocery stores. *Id.* The court noted that the corporate officer "exercised influence in specific stores on multiple occasions," by making suggestions about how products were displayed and addressing problems in individual stores. *Id.* To determine whether the corporate officer was an FLSA employer, the court considered whether the corporate officer had influence over the way the company interacted with the employees, not just over corporate decisions. *Irizarry*, 722 F.3d at 107.

The court in *Irizarry* concluded that the corporate officer was individually liable as an FLSA employer based on several factors, including his active running of the grocery stores and contact with individual stores, employees, vendors, and customers. (*Id.* at 116.) The corporate officer handled customer complaints, in-store displays, merchandising, and the promotion of store personnel. (*Id.*) The court further noted that the corporate officer hired managerial employees and had overall financial control of the company. (*Id.*) The court summarized that the corporate officer was an employer under the FLSA based on his "active exercise of control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees, and his actions in individual stores." *Id.* at 117.

The *Irizarry* decision does not support Plaintiffs' assertion that Allen's negotiation of a contract with the Family Dollar stores, without other evidence that Allen had influence over the way TBI interacted with its employees, is sufficient to conclude that he is an employer under the FLSA. *See Irizarry*, 722 F.3d at 107.

## D. Representation in Labor Investigation

Plaintiffs assert that Allen represented TBI in relation to Plaintiff DeVillier's 2013 complaint with the Texas Workforce Commission seeking unpaid wages (the Texas proceeding). (Doc. 95 at 12; Doc. 96 at ¶¶ 57-60.) Plaintiffs state that Allen represented TBI during an August 5, 2013 telephonic hearing. (Doc. 96 at ¶ 59.) Defendants do not dispute these assertions. (Doc. 97 at 8; Doc. 102 at ¶¶ 57-60.) Plaintiffs argue that

Allen's representation of TBI during the Texas proceeding "weighs heavily in finding" Allen individually liable as an employer under the FLSA. (Doc. 95 at 12.) To support their argument, Plaintiffs cite *Reich v. Circle C. Invs.*, 998 F.2d 324, 329 (5th Cir. 1993). (Doc. 95 at 12.)

In *Reich*, the Fifth Circuit determined that the district court did not err in determining that an individual, who was married to the former owner of a night club that featured dancers, was an employer under the FLSA. *Reich,* 998 F.2d at 329. In reaching that conclusion, the court noted that the defendant controlled work situations, hired two of the dancers, several plaintiffs identified him as their supervisor, the dancers had to perform to the defendant's favorite songs when he was at the night club, he removed money from the corporation's safes, he signed payroll checks, he ordered one employee to refrain from keeping certain records, and he "spoke for Circle C during the Secretary's investigation of possible FLSA violations." *Id.*

The court in *Reich* considered the defendant's role in the investigation of possible FLSA violations one relevant factor in determining that he was an FLSA employer. *Id.* However, the court did not specify how much weight it gave that factor, or indicate that it was a significant factor in support of its determination that the defendant was an FLSA employer. *Id.* Thus, *Reich* does not support the conclusion that Allen's role in the Texas proceeding "weighs heavily" in determining whether Allen was an FLSA employer. Rather, *Reich* suggests that Allen's participation in the proceeding is one factor for the Court to consider.

### E.   Profit from FLSA Violations

Finally, Plaintiffs argue that the Court should conclude that Allen is an employer under the FLSA because otherwise Plaintiffs may "very well see none of their wages paid." (Doc. 95 at 13.) They argue that if the Court does not find employer status, Allen will directly profit from the FLSA violations. *Id.*

To support this proposition, Plaintiffs cite *Irizarry*, 722 F.3d at 116, 118. In *Irizarry*, the court stated that whether the corporate officer was an employer was a "close

case." *Id.* at 116.  The court discussed the facts that supported its conclusion that the corporate officer was an FLSA employer, and noted that although the corporate officer was not personally responsible for the FLSA violations, "he profited from them."  *Id.* at 116-17.  The court did not state that profiting from the FLSA violations was a factor that supported a finding that the corporate officer was an FLSA employer.  *Id*  Accordingly, whether Allen profited from the FLSA violations is not relevant to determining whether he was an FLSA employer in the first instance.

### F.    *Lambert* Factors

Although Plaintiffs do not specifically discuss the *Lambert* factors, because the Ninth Circuit considers those factors relevant in determining whether an individual is an FLSA employer, the Court discusses those factors, specifically (1) the alleged employer's supervision and control of work schedules or employment conditions, (2) determination of rates of pay, and (3) maintenance of employment records.  *Lambert*, 180 F.3d at 1001-02, 1012.

Plaintiffs' motion for summary judgment addresses whether TBI controlled Plaintiffs' employment conditions and work schedules in the context of discussing TBI's control over Plaintiffs.  (Doc. 95 at 2-3.)  However, Plaintiffs do not address whether Allen individually supervised and controlled Plaintiffs' work schedules and employment conditions.  (Doc. 95 at 11-14.)  Plaintiffs' motion for summary judgment also does not address whether Allen personally determined rates of pay for Plaintiffs or personally maintained employment records for D'Vita, Nash, and Green.  (Doc. 95 at 11-14.)  Therefore, these factors do not support a finding that Allen was an employer under the FLSA.

### G.    Totality of the Circumstances

Plaintiffs have offered some undisputed evidence that could support a finding Allen was an employer under the FLSA, including that he negotiated the Family Dollar contract on behalf of TBI and that he spoke for TBI in the proceeding before the Texas Workforce Commission.  However, Plaintiffs have not provided any legal authority

indicating that these two factors alone are sufficient to support a finding that Allen was an FLSA employer. The cases Plaintiffs cite indicate that these factors are relevant to that determination, but not that they are dispositive factors. *See Irizarry,* 722 at 113; *Reich*, 998 F.2d at 329. Additionally, Plaintiffs' other allegations about Allen's role in TBI, including that he had operational control over TBI and that he personally hired and fired employees, are not supported by citations to the record or are disputed. (Doc. 95 at 12-14.) Thus, the Court finds that Plaintiffs have not shown that they are entitled to summary judgment on the issue of whether Allen was an employer who should be held individually liable under the FLSA.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Strike (Doc. 103) is **GRANTED** to the extent that the Court strikes the reference to "thousands of pages of executed franchise agreements" contained in DSSOF paragraphs 47-50. (Doc. 102 at ¶¶ 47-50.)

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 95) is granted in part and denied in part as set forth below.

**IT IS FURTHER ORDERED** that the Court grants summary judgment in favor of Plaintiffs on the issue of whether Plaintiffs D'Vita, Green, and Nash meet the definition of employees of TBI under the FLSA.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1      **IT IS FURTHER ORDERED** that Court **DENIES** summary judgment on the

2 following issues: (1) whether Plaintiffs Dyrhaug, Davis, DeVillier, Brent, and Shelby

3 were employees under the FLSA; (2) whether Plaintiffs Dyrhaug, Davis, DeVillier,

4 Brent, Shelby, D'Vita, Nash, and Green were employees under federal common law; and

5 (3) whether Defendant Allen was an employer under the FLSA.

6      Dated this 15th day of September, 2015.

7

8

9                      _____

10                          Bridget S. Bade

11                  United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28